UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MURDIA M. INGRAM,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,[1]<br>**Acting Commissioner of Social Security,**<br><br>　　　　Defendant. | NO. CV 12-08337-MAN<br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff filed a Complaint on October 4, 2012, seeking review of the denial of plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). On December 6, 2012, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. The parties filed a Joint Stipulation on September 23, 2013, in which:  plaintiff seeks an order reversing the Commissioner's decision and remanding this case for the payment of benefits or, alternatively, for further administrative proceedings; and the Commissioner requests that her decision be affirmed or, alternatively, remanded for further administrative proceedings.  The Court has taken

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013, and is substituted in place of former Commissioner Michael J. Astrue as the defendant in this action.  (*See* Fed. R. Civ. P. 25(d).)

the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for a period of disability and DIB on July 21, 2008, and an application for SSI on July 31, 2008. (Administrative Record ("A.R.") 23.) Plaintiff, who was born on November 5, 1967 (A.R. 41),[2] claims to have been disabled since October 24, 2007, due to a disorder of the lumbar spine, asthma, and obesity (A.R. 25).[3] Plaintiff has past relevant work experience as an accountant. (A.R. 31.)

After the Commissioner denied plaintiff's claim initially, plaintiff requested a hearing. (A.R. 23.) On July 21, 2010, plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge Helen E. Hesse (the "ALJ"). (*Id.*) Vocational expert Alan L. Ey and medical expert Sami A. Nafoosi, M.D. also testified. (*Id.*) On September 10, 2010, the ALJ denied plaintiff's claim (A.R. 23-32), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 4-6). That decision is now at issue in this action.

## SUMMARY OF ADMINISTRATIVE DECISION

In her September 10, 2010 decision, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2012, and plaintiff has not engaged in substantial gainful activity since October 24, 2007, the alleged onset date of her disability. (A.R. 25.) The ALJ determined that plaintiff has the severe impairments of disorder of the lumbar spine, asthma, and obesity as well as the non-severe impairment of post-operative infection.

---

[2] On the alleged disability onset date, plaintiff was 39 years old, which is defined as a younger individual. (A.R. 32; citing 20 C.F.R. §§ 404.1563, 416.963.)

[3] In the Joint Stipulation, plaintiff also asserts that her primary source of disability is meralgia paresthetica. (Joint Stipulation ("Joint Stip.") at 22.)

(A.R. 25-24.) The ALJ concluded, however, that plaintiff does not have an impairment or combination of impairments that meets or medically equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).  (A.R. 26.)

After reviewing the record, the ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform:

> medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that she must be able to change position[s] for one to three minutes every hour; she can occasionally climb, bend, balance, stoop, kneel, crouch, or crawl; she is precluded from concentrated exposure to sudden severe temperature changes, gas, fumes, chemicals, or dust; she needs to have bathroom privileges approximately once every two hours; and a bathroom facility needs to be within 100 yards of her worksite.

(A.R. 27.) In making this finding, the ALJ considered the subjective symptom testimony of plaintiff, which the ALJ found was not entirely credible, as well as the medical evidence and opinions of record. The ALJ gave significant weight to the opinion of the medical expert, Dr. Nafoosi, because unlike the opinions of plaintiff's treating physicians, Ramon C. Sison, M.D. and Henry H. Chang, M.D., the ALJ found Dr. Nafoosi's opinion to be entirely consistent with the laboratory and clinical findings of record. (A.R. 30.)

The ALJ found that plaintiff is capable of performing her past relevant work as an accountant, because "[t]his work does not require the performance of work-related activities precluded by [plaintiff]'s [RFC]." (A.R. 31.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined in the Social Security Act, from October 24, 2007, the alleged onset date, through September 10, 2010, the date of the ALJ's decision. (A.R. 34.)

///

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th

Cir. 2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff asserts three sources of error. First, plaintiff claims, although somewhat obscurely,[4] that the ALJ did not consider properly plaintiff's impairment of meralgia paresthetica, which plaintiff claims is her primary source of disability. (Joint Stip. at 22.) Second, plaintiff claims that the ALJ failed to properly consider the opinions of her treating physicians, Dr. Sison and Dr. Chang. (*Id.* at 4-14, 18-19.) Third, plaintiff claims that the ALJ failed to properly evaluate plaintiff's subjective symptom testimony. (*Id.* at 19-25; 29-30.)

### I. The ALJ Should Should Revisit His Step Two Severity Determination.

At step two of the sequential evaluation process, the ALJ is tasked with identifying a claimant's "severe" impairments. 20 C.F.R. §§ 404.1529(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). A severe impairment is one that "signficantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404,1592(c), 416.920(c). Despite the use of the term "severe," most circuits, including the Ninth Circuit, have held that "the two-step inquiry is a de minimus screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Accordingly, "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [a claimant's] ability to work." Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005) (citation omitted; emphasis in original).

---

[4] This claim was raised and perhaps obscured by the fact that it was brought to light in plaintiff's third claim of error -- *to wit*, that the ALJ failed to consider properly her subjective symptom testimony.

5

As noted *supra*, in her decision, the ALJ found that plaintiff has the severe impairments of lumbar spine disorder, asthma, and obesity. (A.R. 25.) The ALJ noted that plaintiff had a hysterectomy in October 2007, and found plaintiff's resulting, post-operative infection to be a non-severe impairment, because "[it] resolved within 12 months." (A.R. 26.)

Curiously, while the ALJ found the infection resulting from plaintiff's October 2007 hysterectomy to be nonsevere, the ALJ failed to consider whether plaintiff's impairment of "meralgia paresthetica" -- an impairment which plaintiff's treating physicians believed stemmed from plaintiff's hysterectomy -- constituted a severe impairment. In pertinent part, neurologist Natalia L. Ratiner, M.D. diagnosed plaintiff with meralgia paresthetica, an "irritation of the [left] lateral femoral cutaneous nerve" and prescribed Neurontin to plaintiff. (A.R. 361.) Neurologist Sergio Fuenzalida, M.D. also diagnosed plaintiff with meralgia paresthetica, and he noted the bilateral thigh pain experienced by plaintiff since her hysterectomy. (A.R. 632.) Similarly, neurologist James Kim, M.D., noted plaintiff's complaints of bilateral thigh pain and opined that plaintiff may have meralgia paresthetica "[b]ased on [her] sensory disturbance alone." (A.R. 358.) In addition, plaintiff's treating physician Dr. Chang noted that he had a "strong impression" that plaintiff had meralgia paresthetica, which he described as "a condition related [to] inflammation or injury of a pure <u>sensory nerve</u>, [the] 'lateral femoral cutaneous nerve' which branches into the lateral upper edge of the iliac crest to the area of lateral aspect of [the] thigh," which he believed could have been related to plaintiff's hysterectomy. (A.R. 634.) While plaintiff's other treating physician, Dr. Sison, did not precisely diagnose plaintiff with meralgia paresthetica, he opined that plaintiff had sensory neuropathy in both of her lower extremities. (A.R. 336.) Indeed, even the consultative examining internist, Soheila Benrazavi, M.D., noted that the pain plaintiff experienced after her hysterectomy "appears to be neuropathic in origin in the bilateral thighs." (A.R. 307.) Dr. Benrazavi opined that plaintiff's "condition resembles reflex sympathetic dystrophy." (*Id.*)

Accordingly, in view of the opinions of plaintiff's physicians, including three neurologists,

and the fact that the ALJ did not address this impairment in her step two determination, the ALJ should revist her step two severity determination and determine whether plaintiff's impairment has, or had for a period of 12 or more months, more than a minimal effect on plaintiff's ability to perform basic work activities.

## II. The ALJ Failed To Give Specific And Legitimate Reasons For Rejecting The Opinions Of Plaintiff's Treating Physicians.

### A. Legal Standard

An ALJ is obligated to take into account all medical opinions of record. 20 C.F.R. §§ 404.1507(d), 416.927(d). It is the responsibility of the ALJ to resolve conflicts in medical testimony and analyze evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d).

The opinions of treating physicians are entitled to the greatest weight, because the treating physician is hired to cure and has a better opportunity to know and observe the claimant. Magallanes, 881 F.2d at 751. When a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When contradicted by another doctor, a treating or examining physician's opinion may only be rejected if the ALJ provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*; *see also* Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008); Orn, 495 F.3d at 632.

"The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." Lester, 81 F.3d at 831; *see* Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (finding that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence).  However, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence." Andrews, 53 F.3d at 1041. Independent clinical findings include "(1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or (2) findings based on objective medical tests that the treating physician has not herself considered." Orn, 495 F.3d at 632 (internal citations omitted).

### B. Medical Background

#### 1. Dr. Sison

On September 1, 2008, plaintiff's treating physician, Dr. Sison, completed a Musculoskeletal form. (A.R. 298-300.)  In that form, Dr. Sison indicated that plaintiff has had bilateral peripheral neuropathy in her lower extremities since October 2007, and has swelling in her joints.  (A.R. 298.)  Dr. Sison noted that plaintiff needs a cane for standing and walking and that her condition is not improving.  (A.R. 299.)

In a Multiple Impairment Questionnaire completed on March 31, 2010, Dr. Sison diagnosed plaintiff with spinal foraminal stenosis at the L3-S1 levels and peripheral neuropathy in both lower extremities.  (A.R. 336.)  Dr. Sison reported that his diagnoses were based on plaintiff's November 2008 MRI results, which showed neuroforaminal narrowing at L3-S1, as well as plaintiff's leg spasms and pain.  (A.R. 336-37.)  Dr. Sison noted that plaintiff: has pain every 30 minutes to one hour; experiences pain when she moves or sits for long periods of time; and has an unsteady gait.

(A.R. 338.) Dr. Sison opined that, in an eight-hour day, plaintiff: can sit and stand/walk for one hour; must get up and move around every hour; should not sit or stand/walk continuously in a work setting; can lift and carry 5-10 pounds occasionally; has minimal limitations in grasping, turning, and twisting objects; has minimal limitations in using her fingers/hands for fine manipulations; and moderate limitations in using her arms for reaching (including overhead). (A.R. 340.) Dr. Sison noted that plaintiff is taking, *inter alia*, Neurontin and Vicodin, and plaintiff has not been helped by physical therapy, which she had three times per week for two months. (A.R. 340.) Dr. Sison also noted that plaintiff: is prone to recurrent bladder infections and would need a job that permits ready access to a bathroom; has anxiety/depression and insomnia that contribute to the severity of her condition; cannot handle even "low" work stress; needs frequent unscheduled breaks; and has an unsteady gait and ambulates with a cane. (A.R. 341-42.)

### 2. Dr. Chang

On December 16, 2009, plaintiff was seen for pain management by Dr. Chang. (A.R. 394-95.) Dr. Chang noted plaintiff's reports of pain and numbness in her lower extremities as well as pain in her lower back. (A.R. 394.) Dr. Chang observed that plaintiff ambulated with a cane and appeared to be slightly depressed and "heavy set probably due to inability to move for daily activities." (*Id.*) Upon examination, the ALJ noted that plaintiff: experienced "moderate[ly] severe pain and tingling in both lateral thigh[s]"; had positive straight leg raising tests with pain at 45 degrees; and "was not able to lay down for [her] exam [due to] the pain and residual inflammation from [her] surgical scar two years ago." (*Id.*) Following his examination of plaintiff, Dr. Chang opined that plaintiff "seems to have complicated low back pain combined with pain of both lateral thighs. Based on her surgical history, she could have [a] combination of lower lumbar pathology and other cause[s] of pain such as meralgia paresthetica." (A.R. 395.) Dr. Chang recommended that plaintiff receive nerve block and steroid injections. (*Id.*)

In May 2010, Dr. Chang reviewed the results of plaintiff's 2007 C.T. scan as well as her

2008 and 2009 MRI scans. (A.R. 430.) In a Lumbar Spine Impairment Questionnaire, Dr. Chang diagnosed plaintiff with low back pain and noted that it was probably related to plaintiff's bulging discs in her lumbar spine at the L4-5 and L5-S1 levels. Dr. Chang also noted the positive clinical findings that supported his diagnosis, including plaintiff's tenderness in her sides and her limited range of motion. (A.R. 346.) Dr. Chang opined, *inter alia*, that plaintiff: cannot sit or stand/walk for more than one hour in an eight-hour workday; cannot lift or carry weight; and should not sit continuously in a work setting. (A.R. 348-49.)

On February 21, 2012, in response to a request for further explanation of plaintiff's condition, Dr. Chang noted that in his December 2009 initial examination he had the impression that the incision from plaintiff's October 24, 2007 hysterectomy "was not properly healed because she had problems lifting her lower abdominal area so [he] could inspect the wound" and "[s]he also had difficulty getting herself on the exam table without help." (A.R. 634.) Dr. Chang noted that plaintiff has continued to have persisting pain and that the two injection treatments only provided pain relief for 2-3 days. (*Id.*) Dr. Chang also noted that he had a strong impression that plaintiff has "'Meralgia Paresthetica,' a condition related [to] inflammation or injury of a pure sensory nerve, [the] 'lateral femoral cutaneous nerve' which branches into the lateral upper edge of the iliac crest to the area of lateral aspect of [the] thigh." (*Id.*) Dr. Chang remarked that this condition "can be related [to] lower abdominal surgery in rare occasion due to the necessary traction involved during surgery."[5] (*Id.*)

### C. Analysis

In her decision, the ALJ summarized the opinions of Dr. Sison and Dr. Chang as follows:

---

[5] Dr. Chang's explanation, including his opinion that plaintiff has meralgia paresthetica, was not before the ALJ at the time of her decision. As this case is being remanded, the ALJ should review this explanation and diagnosis by Dr. Chang, which, as noted *supra*, appears to have support in the medical record.

> Dr. Sison opined that [plaintiff] has the [RFC] to sit for one hour and stand/walk for one hour in an eight-hour workday, and occasionally lift-carry 5 to 10 pounds. Similary, Dr. Chang opined that [plaintiff] can sit for up to one hour and stand/walk for up to one hour in an eight-hour workday, but cannot lift or carry any amount of weight.

(A.R. 31.) The ALJ afforded no weight to the opinions of Dr. Sison and Dr. Chang, because "the[ir] opinions find no basis in medical fact, and therefore demonstrate almost total reliance on [plaintiff]'s unsupported and inconsistent subjective complaints." (*Id.*)

The ALJ's stated reason for rejecting the opinions of Dr. Sison and Dr. Chang -- *to wit*, that their opinions find no basis in medical fact -- is conclusory and factually incorrect. *See* Regennitter v. Comm'r of SSA, 166 F.3d 1294, 1299 (9th Cir. 1999) (noting that "conclusory reasons will not justify an ALJ's rejection of a medical opinion"); Embrey v. Bowen, 849 F.2d 418, 421–22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required."). As described in detail *supra*, Dr. Sison specifically noted the objective findings, including, *inter alia*, plaintiff's November 2008 MRI results as well as his findings regarding plaintiff's unsteady gait, the swelling in her joints, and her leg spasms, which support his opinion. Similarly, after reviewing plaintiff's MRI, Dr. Chang supported his opinion by noting plaintiff's disc bulges in her lower back, her positive straight leg raising test, and his objective findings of restricted range of motion and tenderness in plaintiff's back. Moreover, while the ALJ focuses on the lack of objective support in the record, it appears that plaintiff's primary impairment may be neuropathic in origin. As noted *supra*, there are several medical opinions of record supporting the opinions of Dr. Chang and Dr. Sison, including the opinions of neurologists who diagnosed plaintiff with meralgia paresthetica. In fact, the consultative examiner, Dr. Benrazavi, whose opinion the ALJ gave short shift, also opined that plaintiff's pain and impairment appear to be neuropathic in origin. Accordingly, because the

opinions of Dr. Sison and Dr. Chang have a basis in medical fact, the ALJ's reasoning, with nothing more, is unavailing. Accordingly, for the aforementioned reasons, the ALJ failed to properly reject the opinions of Dr. Sison and Dr. Chang.

Moreover, it is unclear whether the opinion of medical expert, Dr. Nafoosi, upon whose opinion the ALJ relied in finding plaintiff not disabled, is supported by substantial evidence. Significantly, Dr. Nafoosi's opinion is contrary not only to the opinions of plaintiff's treating physicians, Dr. Sison and Dr. Chang, but also to the opinion of the independent consultative examiner, Dr. Benrazavi. Further, it does not appear that Dr. Nafoosi carefully reviewed the medical opinions of record, because he never mentioned, let alone discussed, the multiple diagnoses of meralgia paresthetica.

### III. On Remand, The ALJ Should Revisit Her Assessment Of Plaintiff's Credibility.

Once a disability claimant produces objective medical evidence of an underlying impairment that is reasonably likely to be the source of claimant's subjective symptom(s), all subjective testimony as to the severity of the claimant's symptoms must be considered. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); *see also* 20 C.F.R. §§ 404.1629(a), 416.929(a) (explaining how pain and other symptoms are evaluated). "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins, 466 F.3d at 883. The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See* Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); *see also*

12

20 C.F.R. §§ 404.1529(c), 416.929(c).

In her decision, the ALJ summarized plaintiff's testimony regarding her subjective symptoms and limitations as follows:

> At the hearing, [plaintiff] testified that she has been unable to work since October 24, 2007 because of various pain symptoms that began following her hysterectomy on that date. Specifically, [plaintiff] testified that she experiences chronic burning and tingling throughout her upper and lower extremities bilaterally, as well as in her lower back. She further testified to continued abdominal tenderness at the incision site, pressure during urination, and loss of bladder control. As treatment for her pain symptoms, [plaintiff] testified that she takes Vicodin, Neurontin, and Ibuprofen, and further indicated that these medications make her drowsy. Lastly, [plaintiff] testified that she has asthma, which onset prior to her hysterectomy.
>
> In terms of functional limitations, [plaintiff] testified that she is unable to walk without the assistance of a walker or other ambulatory aid; she has difficulty sitting for extended periods; she can lift 10 to 15 pounds; she can reach with her upper extremities bilaterally, but not overhead; and she has difficulty bending.
>
> As for activities of daily living, [plaintiff] testified that although she adopted her two cousins (a newborn and a 1½-week-old) just prior to her hysterectomy, she has not lifted them since the surgery, and now relies on her mother to care for them. [Plaintiff] also testified that although she has a driver's license, she no longer does any driving, and relies solely on her family for transportation. In addition to the above testimony, [plaintiff] reported in an Exertional Activities Questionnaire, dated August 26, 2008, that she does her own grocery shopping twice a week and regularly cleans her kitchen, bedroom, and bathrooms.

(A.R. 27; citation omitted.)

After considering plaintiff's testimony, the ALJ cited no evidence of malingering by plaintiff and concluded that "plaintiff]'s medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (A.R. 28.) Nevertheless, the ALJ determined that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." (*Id.*) Given the absence of malingering, the ALJ's reasons for finding that plaintiff is not credible with respect to her subjective symptom testimony must be "clear and convincing."

The ALJ first rejected plaintiff's subjective symptom testimony based on the ALJ's conclusion that "the record contains very few objective clinical or laboratory findings to substantiate [plaintiff's] subjective complaints." (A.R. 28.) Assuming *arguendo* that the objective medical evidence did not corroborate the degree of plaintiff's allegedly disabling symptoms, this factor cannot form the "sole basis" for discounting plaintiff's subjective symptom testimony. Burch, 400 F.3d at 681; *see* Bunnell, 947 F.2d at 34 (noting that, "[i]f an adjudicator could reject a claim of disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings"). Accordingly, because the ALJ's first ground cannot, by itself, constitute a clear and convincing reason for discrediting plaintiff's testimony, the ALJ's credibility determination rises or falls with the ALJ's other grounds for discrediting plaintiff.

Second, the ALJ rejected plaintiff's subjective symptom testimony, because plaintiff made inconsistent statements regarding her limitations and activities of daily living. (A.R. 30.) For example, the ALJ noted that plaintiff testified that "she has not picked up her adopted children since her hysterectomy," but "she has acknowledged performing various activities that are inconsistent with this level of limitation, such as regularly lifting up to 15 pounds, doing her own

grocery shopping twice a week, and regularly cleaning her kitchen, bedroom and bathrooms." (*Id.*) As an initial matter, the fact that plaintiff does not lift her two adopted children, who almost certainly weigh more than 15 pounds each, does not appear to be inconsistent with her testimony that she regularly lifts 15 pounds. Further, the ALJ fails to explain how plaintiff's other activities -- which as plaintiff testified, and the ALJ failed to note, are performed slowly and with multiple breaks -- are inconsistent with her inability to lift her two adopted children. Therefore, the ALJ's second reason does not constitute a clear and convincing reason for finding plaintiff to be not credible.[6]

Third, the ALJ rejected plaintiff's subjective symptom testimony, because plaintiff made inconsistent statements during her testimony at the administrative hearing. Specifically, the ALJ noted that "[plaintiff] testified that she initially chose not to file a medical malpractice action against the surgeon who performed her hysterectomy -- the procedure she now blames for all her current medical problems -- because she wanted to find out what happened, what was wrong with her, and wanted to be taken seriously." (A.R. 30.) However, "[s]he later testified . . . that she saw a urologist in 2008 who stated that all of her medical problems were related to the surgery, and that she also visited an attorney who told her that she had a strong claim for medical malpractice, yet she never filed an action." (*Id.*) Contrary to the ALJ's finding, there does not appear to be an inconsistency between plaintiff's two statements, and plaintiff's decision not to proceed with a medical malpractice action does not detract from her credibility.

Fourth, the ALJ rejected plaintiff's subjective symptom testimony, because he concluded

---

[6] Moreover, exacerbating the foregoing error, the ALJ fails to explain how plaintiff's ability to perform the above-mentioned activities (albeit slowly and with breaks) translates into the ability to perform full-time work and renders plaintiff's testimony about her pain and symptoms unworthy of belief. *See* Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (noting that the "mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability"); Smolen, 80 F.3d 1283 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.").

that plaintiff stopped working for reasons other than her alleged disability. Specifically, the ALJ noted that "[a]lthough [plaintiff] testified that she stopped working in September 2007, just prior to her hysterectomy, she previously acknowledged in her Disability Report form that she actually stopped working in July 2007 because she was self-employed and decided to care for her children." (A.R. 30.) When a claimant stops working for reasons other than disability, the ALJ may draw an adverse inference as to the credibility of her disability claim. *See* Brutton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (affirming the ALJ's adverse credibility determination based, in part, on the claimant's admission that he left his job due to a lay-off, rather than because he was injured). In view of the fact that plaintiff stopped working for a reason other than her alleged disability, the ALJ's reasoning may constitute a clear and convincing reason for finding plaintiff to be not credible.

However, as this case is being remanded for the ALJ to reconsider plaintiff's impairment of meralgia paresthetica as well as the opinions of Dr. Sison and Dr. Chang, which may support plaintiff's complaints and her alleged limitations, the ALJ should also reassess plaintiff's credibility.[7] After so doing, the ALJ must either credit plaintiff's subjective symptom testimony or provide clear and convincing reasons why plaintiff's testimony in this respect is not credible.

**IV.   Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th

---

[7] In reassessing plaintiff's credibility, the ALJ should specifically reconsider her evaluation of the side effects of plaintiff's medication. In her decision, while the ALJ acknowledged plaintiff's testimony that her pain medication, including Vicodin and Neurontin, makes her drowsy (A.R. 27), the ALJ appears to overstep her function by making the medical conclusion that "the high doses of prescription pain medication that [plaintiff] testified to taking do not appear to be medically necessary" (A.R. 29). Such a determination is reserved to a medical doctor, not an ALJ. Further, it does not appear that the ALJ considered all plaintiff's medications, which included not only Neurontin and Vicodin but also Robaxin, Naprosyn, Tramadol, Ketovolac, epidurals, and Lyrica. (Joint Stip at 8, 11.)

16

Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* at 1179-81.

Remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See* Bunnell, 336 F.3d at 1116 (affirming remand order based, in part, on ALJ's failure to provide adequate reasons for rejecting claimant's treating physicians' opinions). On remand, the ALJ must correct the above-mentioned deficiencies and errors.

**CONCLUSION**

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED: March 24, 2014

*Margaret A. Nagle*
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE